UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIMLESH SHARMA, JEFFRY SUAREZ, TRINIDAD CORTEZ, and GARIN MARSHALL,<br><br>Plaintiffs,<br><br>v.<br><br>SAVE MART SUPERMARKETS, INC., A California Corporation; DAN PENROSE, individually; JOHN SEALS, individually; JEFF SAWYER, individually and Does 1 though 50.<br><br>Defendants. | No. 2:18-cv-02431-MCE-AC<br><br>**MEMORANDUM AND ORDER** |

Vimlesh Sharma ("Sharma"), Jeffry Suarez ("Suarez"), Trinidad Cortez ("Cortez"), and Garin Marshall ("Marshall") (collectively, "Plaintiffs") initiated this action against Defendants Save Mart Supermarkets, Inc. ("Save Mart"), Dan Penrose ("Penrose"), John Seals ("Seals"), and Jeff Sawyer ("Sawyer") (collectively "Defendants"). Save Mart subsequently removed the matter here. Presently before the Court is Plaintiffs' Motion to Remand (ECF No. 4) which, for the reasons set forth below, is GRANTED.[1]

///

---

[1] Because oral argument would not be of material assistance, the Court ordered this matter submitted on the briefs. E.D. Cal. Local Rule 230(g).

1

## BACKGROUND[2]

Save Mart is a California-based grocery store chain operating multiple stores and distribution centers throughout the state. Plaintiffs were all, at some point, employed at Defendant's distribution center in Roseville, California. Each Plaintiff contends he suffered some adverse employment action resulting in termination by Save Mart.

First, in April 2012, Sharma suffered a work-related back injury. After his injury worsened in January 2017, Sharma notified Seals that he required modified work restrictions. Seals denied Sharma's request for accommodation. Instead, according to Sharma, Save Mart would not allow him to "return to work until he was 100 percent healed." Sharma eventually returned to work in November 2017 but suffered another work-related injury in April 2018. After discussing his latest injury with a surgeon, Sharma notified Seals of the new injury and necessary work restrictions. However, this request for accommodation was also denied. Sharma was ultimately "taken off schedule and deemed as terminated by [Defendant's] actions." Pls.' MPA ISO Mot. to Remand, ECF No. 4, 2:4–5.

Second, in 2015, Suarez experienced a hyperglycemic attack while at work due to the fact that he is diabetic. In the disoriented state of his attack, Suarez failed to pick up multiple cases of asparagus. Id. at 2:7–11. As a result of the "missed picks," Save Mart terminated Suarez. Id. at 2:10–11.

Third, in October 2016, Cortez suffered a work-related injury requiring modified light duty work. While working his modified light duty schedule between October and December of 2016, Cortez alleges he was harassed by other employees for reporting the injury and seeking modifications. In December 2016, Cortez filed a worker's compensation claim; however, Defendant alleged the claim was fraudulent and ultimately terminated Cortez.

///

---

[2] Unless otherwise indicated, the following facts derive from Plaintiffs' Complaint.

Finally, in 2015, Marshall also suffered a work-related injury requiring placement on modified light duty work. Marshall contends that his direct supervisors harassed him for needing to work with restrictions. When Marshall suffered another injury requiring work restrictions on March 20, 2017, he was suspended from work pending an investigation of attendance disciplinary points. Ultimately, Plaintiff Marshall was terminated in April 2017.

As a result of the foregoing events, Plaintiffs filed the present suit against their former employer alleging various state claims, including: (1) Physical Disability/Medical Condition Discrimination; (2) Physical Disability/Mental Condition Harassment; (3) Retaliation; (4) Failure to Engage in the Interactive Process; (5) Failure to Make Reasonable Accommodations; (6) Failure to Prevent Discrimination, Harassment and Retaliation; and (7) Wrongful Termination in Violation of Clear Public Policy. Defendant then timely removed the matter, taking the position that federal jurisdiction over these otherwise state law claims is proper here because they are preempted under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 141 et seq. ("LMRA" or "Section 301). Plaintiffs disagree and move to remand, arguing that the LMRA is not implicated.

## STANDARD

When a case "of which the district courts of the United States have original jurisdiction" is initially brought in state court, the defendant may remove it to federal court "embracing the place where such action is pending." 28 U.S.C. § 1441(a). There are two bases for federal subject matter jurisdiction: (1) federal question jurisdiction under 28 U.S.C. § 1331, and (2) diversity jurisdiction under 28 U.S.C. § 1332. A district court has federal question jurisdiction in "all civil actions arising under the Constitution, laws, or treaties of the United States." Id. § 1331. A district court has diversity jurisdiction "where the matter in controversy exceeds the sum or value of $75,000, . . . and is

between citizens of different states, or citizens of a State and citizens or subjects of a foreign state . . . ." Id. § 1332(a)(1)-(2).

A defendant may remove any civil action from state court to federal district court if the district court has original jurisdiction over the matter. 28 U.S.C. § 1441(a). "The party invoking the removal statute bears the burden of establishing federal jurisdiction." Ethridge v. Harbor House Rest., 861 F.2d 1389, 1393 (9th Cir. 1988) (citing Williams v. Caterpillar Tractor Co., 786 F.2d 928, 940 (9th Cir. 1986)). Courts "strictly construe the removal statute against removal jurisdiction." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992) (internal citations omitted). "[I]f there is any doubt as to the right of removal in the first instance," the motion for remand must be granted. Id. Therefore, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded" to state court. 28 U.S.C. § 1447(c).

The district court determines whether removal is proper by first determining whether a federal question exists on the face of the plaintiff's well-pleaded complaint. Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987). If a complaint alleges only state-law claims and lacks a federal question on its face, then the federal court must grant the motion to remand. See 28 U.S.C. § 1447(c); Caterpillar, 482 U.S. at 392. Nonetheless, there are rare exceptions when a well-pleaded state-law cause of action will be deemed to arise under federal law and support removal. They are "(1) where federal law completely preempts state law, (2) where the claim is necessarily federal in character, or (3) where the right to relief depends on the resolution of a substantial, disputed federal question." ARCO Envtl. Remediation L.L.C. v. Dep't of Health & Envtl. Quality, 213 F.3d 1108, 1114 (9th Cir. 2000) (internal citations omitted).

**ANALYSIS**

Under the LMRA, federal courts have jurisdiction over "[s]uits for violation of contracts between employers and a labor organization representing employees."

4

29 U.S.C. § 185(a). In determining whether Section 301 preempts the Plaintiffs' state law claims, the Court must use a two-step analysis. First, this Court must evaluate whether the claim arises from independent state law or from the collective bargaining agreement ("CBA"). Burnside v. Kiewit Pac. Corp., 491 F.3d 1053, 1059 (9th Cir. 2007). Second, if the rights exist independently of a CBA, the Court must consider whether the claims are "substantially dependent on analysis of a collective bargaining agreement." Id. "Where there is such substantial dependence, the state law claim is preempted by § 301. If there is not, then the claim can proceed under state law." Kobold v. Good Samaritan Reg'l Med. Ctr., 832 F.3d 1024, 1032–34 (9th Cir. 2016).

The LMRA does not preempt state law discrimination claims where a court can uphold independent state claims without interpreting the terms of the CBA. Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 211–213 (1985). To the extent state-based anti-discrimination statutes exist completely apart from the terms of a CBA and are nonnegotiable in any event, Congress in enacting the LMRA never intended to preempt their provisions. Miller v. AT&T Network Sys., 850 F.2d 543, 546 (9th Cir. 1988). Where adjudication of a state claim depends on the analysis or interpretation of CBA terms, however, the calculus changes. Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 413 (1988) ("In sum, we hold that an application of state law is preempted by § 301 of the Labor Management Relations Act of 1947 only if such application requires the interpretation of a collective-bargaining agreement.").

Save Mart contends jurisdiction is proper here because resolution of this case requires substantial interpretation of the CBA's provisions going to discipline, discharge, attendance, seniority, bidding procedures, management rights, and physical examinations of employees. Indeed, Save Mart takes the position that Plaintiffs' claims "directly or indirectly invoke the CBA's express and implied terms." More specifically, according to Save Mart, Marshall's claim of discriminatory termination is completely preempted because the parties dispute whether Marshall was properly terminated pursuant to the CBA's attendance points. Defendant similarly contends that Sharma's

claim that he was subjected to an unlawful "100% healed policy" turns on evaluation of the CBA to determine whether Sharma's removal from light duty work resulted from discrimination or from lack of eligibility under the CBA's bid procedures. Finally, Save Mart argues that Suarez was terminated based on the CBA's progressive discipline requirements, not as a result of discrimination. According to Save Mart, each of their defenses offers legitimate, non-discriminatory reasons for employee termination that require substantial interpretation of the CBA is to determine their validity.[3]

Save Mart's arguments are not well taken. If a "claim is plainly based on state law, § 301 preemption is not mandated simply because the defendant refers to the CBA in mounting a defense." Cramer v. Consol. Freightways, Inc., 255 F.3d 683, 691 (9th Cir. 2001). Moreover, "'[s]ubstantial dependence' on a CBA is an inexact concept, turning on the specific facts of each case, and the distinction between 'looking to' a CBA and 'interpreting' it is not always clear or amenable to a brightline test." Id.

Regardless of Save Mart's reasons for termination, the ultimate resolution of each of Plaintiffs' state law claims requires, at most, mere reference to or "looking to" the CBA. Accordingly, this Court lacks subject matter jurisdiction because any need to reference the CBA here will not rise to the level of requiring substantial analysis or interpretation to resolve Plaintiffs' claims. It follows that Save Mart has failed to meet its burden of establishing Section 301 preemption, and remand is thus proper.

///
///
///
///
///
///
///
///

---

[3] Defendant makes no specific arguments regarding Cortez, so he is not discussed here.

**CONCLUSION**

For the reasons set forth above, Plaintiffs' Motion to Remand, ECF No. 4, is GRANTED in its entirety, and the Clerk of the Court is directed to close the case after effectuating its transfer to the originating state court, the Superior Court of the State of California in and for the County of Placer.

IT IS SO ORDERED.

Dated: September 30, 2019

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE